IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CARLOS JOSÉ PAGÁN, ) | Civil Action No. 3:03-2903-MBS-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA; ) | |
| DAN L. DOVE; R. TYRONE ALLEN; ) | |
| S. A YATES; R. TIM GRAVETTE; ) | |
| ROBERT BOB MCCLAFFERTY; ) | |
| KAHLE VINNING; JOHN REDMAN; ) | |
| JOHN CLARK; JUAN CARMONA; ) | |
| SHELTON FLOURNOT; ) | |
| BRAD MUNSON; FELANDER TURNER;) | **REPORT AND RECOMMENDATION** |
| WILLIAM REESE; KEVIN PEAY; ) | |
| ANDREW CRAWFORD; AND ) | |
| OSMOND BRINSON, ) | |
| ) | |
| Defendants. ) | |
| ) | |

On September 12, 2003, Plaintiff filed this action.[1] His claims concern an incident that occurred while he was an inmate at the Federal Correctional Institution in Edgefield, South Carolina ("FCI-Edgefield"). Plaintiff filed an amended complaint on June 21, 2004. Defendants filed a motion to dismiss, or in the alternative for summary judgment,[2] on September 30, 2004. Plaintiff, because he is proceeding pro se, was advised on October 4, 2004, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion to

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

[2] As matters outside the pleadings have been considered, the undersigned has treated this motion as a motion for summary judgment.

dismiss and/or for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on November 3, 2004. He filed additional materials on April 27, 2005.

### MOTIONS FOR SUMMARY JUDGMENT

On December 9, 2001, Plaintiff was attacked by other inmates at FCI-Edgefield. He sustained injuries to his face that required surgery. Plaintiff alleges a claim, pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 397 (1971), that his Eighth Amendment rights were violated because Defendants failed to protect him from the attack. He also alleges a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, <u>et</u> <u>seq</u>., that the United States failed in its duty to protect him and that Defendants were grossly negligent in ensuring his safety.

Defendants argue that they are entitled to summary judgment because: (1) sovereign immunity bars the action; (2) Defendants are entitled to qualified immunity; (3) the discretionary function exception bars Plaintiff's FTCA action; and (4) Plaintiff fails to state a claim upon which relief can be granted.

1.    <u>Bivens</u>

Defendants argue that they are entitled to summary judgment as to Plaintiff's claim brought pursuant to <u>Bivens</u> because this court lacks jurisdiction over Defendants in their official capacities; (2) Plaintiff fails to show that Defendants were deliberately indifferent to his need to be protected; and (3) Defendants are entitled to qualified immunity in their individual capacities.

Plaintiff claims that on October 22, 2001, he was informed by Lt. Johnson ("Johnson") that he was to be placed in the special housing unit ("SHU") because BOP employees received

2

information that Plaintiff's life was in danger. Plaintiff states that he wanted to sign a form waiving "toughman" protection, but when Johnson told him his life was in serious jeopardy, he felt fear and went to the SHU for protection under protective custody ("PC") status. Plaintiff claims that Defendant Juan Carmona ("Carmona") informed him that he was to be separated from all Latino inmates. He claims that instead he was then placed in an SHU cell with Latino inmates. Plaintiff was returned to general population on approximately November 5, 2001. He was then informed that Defendant Robert McLafferty ("McLafferty") received another note stating that Plaintiff was going to be killed. It was not determined from where the threat came. Plaintiff claims that he was ordered to be placed on PC status and separated from all other inmates, but instead was placed in a cell with a Latino inmate. On November 15, 2001, Defendants Tim Gravett and John Redmond ("Redmond") decided to release Plaintiff back into general population. He was not placed in general population because McLafferty stated that he had received another threat note. Plaintiff states that Carmona told Plaintiff that McLafferty "confirmed" that if Plaintiff was not protected he would be killed. He also claims he was going to be separated from other Latino inmates, but that was not done. Plaintiff claims that he questioned his placement with other Latino inmates and his non-segregated recreation time. He claims he repeated his requests, but was told that he could not be given an actual "PC" status cell because there was not enough available space and the SHU was overcrowded. Plaintiff states that on December 9, 2001, he went to recreation as always and Defendant Kevin Peay ("Peay") tried to place Plaintiff in a recreation area with four other Latino inmates. He states he refused to go into the cage, but Defendant Peay forced him to go into the recreation cage. Plaintiff claims he lost consciousness and later woke up with pain in his body and head.

3

Redmond and McLafferty state that on October 22, 2001, Plaintiff was placed in the FCI-Edgefield SHU because the Special Investigative Supervisor ("SIS") had information regarding a series of events, purported to be narcotics related, that involved members of the Cuban and Puerto Rican inmate population. They state that Plaintiff was directly involved in these events, is of Puerto Rican nationality, was suspected to be in the gang known as Netas, and was purportedly the leader of the Netas at FCI Edgefield. They state that Plaintiff was placed in the SHU for the purpose of an investigation into possible involvement in activities that took place prior to October 22, 2001. The SIS informed SHU staff that during his stay in SHU, he was to be separated from, meaning not placed in a cell or recreation with, all Cuban inmates. Defendants' Exs.[3] 1 & 2 (Declarations of Redmond and McLafferty) and 3 (Administrative Detention Order).

On November 5, 2001, the SIS concluded its investigation and determined that there was no viable evidence or information that Plaintiff had been directly involved in the previous incidents. Plaintiff was permitted to reenter the general population. Prior to his release from the SHU, Plaintiff signed a Request to Remain in General Population memorandum, which indicated he did not have any fear for his safety by being released back into the general population. Defendants' Ex. 4. Shortly after his release to general population, Plaintiff was placed back in the SHU because the SIS received information that if Plaintiff was released from the SHU, a gang known as the "Border Brothers" was going to make a "move" on him because of a narcotics issue. Redmond and McLafferty provide that there was no need to keep Plaintiff separated from all inmates because the only threat perceived to him was from Cuban inmates and inmates who were

---

[3]"Ex." refers to an exhibit to Defendants' motion for summary judgment.

4

members or associates of the "Border Brothers." Defendants' Exs. 1 and 2, and 5 (Administrative Detention Order).

On November 30, 2001, the SIS concluded its threat assessment and indicated the investigation revealed a viable threat existed to institutional security and safety of Plaintiff if he returned to FCI Edgefield general population. Intelligence received by the SIS office indicated a narcotic oriented power struggle between Cuban and Puerto Rican inmates, and a series of altercations which had been taking place. Defendants' Ex. 6 (Threat Assessment). The SIS also recommended that Plaintiff be transferred to another facility commensurate to his security requirements and Plaintiff remain within the confines of the SHU until a transfer could be effectuated. Plaintiff continued to remain within the SHU and was assigned to a cell and recreation with other inmates, except for Cuban inmates or members or associates of the Border Brothers. On December 9, 2001, Plaintiff was escorted to the SHU recreation area. He was placed in a recreation area that contained four inmates of Puerto Rican nationality. The recreation officer noticed later that the recreation area became very quiet. He found Plaintiff in the rear of the recreation area with his face covered in blood. Plaintiff was taken to FCI Edgefield Health Services for medical care. Defendants' Ex. 7. He was later taken to a community hospital where he was diagnosed with facial and sinus fractures which required surgery, which he subsequently underwent. Defendants' Ex. 8, Plaintiff's Medical Record.

The inmates located in the SHU recreation area were interviewed and two of the inmates admitted that they committed the assault. One of the inmates stated that Plaintiff disrespected him during the recreation hour, so he hit him. Another inmate stated that the assault was a personal thing between Plaintiff and himself. Defendants' Ex. 7.

A.   Subject Matter Jurisdiction

This court lacks subject matter jurisdiction over Plaintiff's claims brought pursuant to Bivens against Defendants in their official capacities. The United States cannot be sued without its express consent, and express consent is a prerequisite to a suit against the United States. United States v. Mitchell, 463 U.S. 206, 212 (1983). The United States has not consented to suit under the Bivens doctrine. The bar of sovereign immunity cannot be avoided by naming officers or employees of the United States as defendants. Gilbert v. Da Grossa, 756 F.2d 1455, 1458 (9th Cir. 1985); cf. Hawaii v. Gordon, 373 U.S. 57, 58 (1963). Claims against Defendants in their official capacities are barred by sovereign immunity. See Hagemeir v. Block, 806 F.2d 197, 202 (8th Cir. 1986), cert. denied, 481 U.S. 1054 (1987); Gilbert, 756 F.2d at 1458.

B.   Failure to Protect

Plaintiff alleges that Defendants violated his Eighth Amendment rights because they were deliberately indifferent and negligent in failing to protect him from harm from other inmates. Defendants argue that Plaintiff fails to show that they were deliberately indifferent to his safety.

Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim. Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987). Not every injury suffered by one inmate at the hands of other inmates, however, translates into constitutional liability for the prison officials responsible for the victim's safety. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). In Farmer, the Supreme Court defined deliberate indifference, holding that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk

6

of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id., at 847.  The test is not whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregarded that risk.  "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id., at 837.  While the objective information known to the official may be used to infer the knowledge he actually had, and to draw inferences about his actual state of mind, those inferences are not conclusive.  Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. Whitley v. Albers, 475 U.S. 312, 319 (1986); Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991), cert. denied, 502 U.S. 828 (1991); Pressly, supra.

Plaintiff fails to show that Defendants knew of a threat from his attackers prior to the alleged incident.  Defendants provide that the only viable threat they knew of was posed by Cuban inmates and inmates who were members or associates of the Border Brothers.  The inmates in the SHU recreation area with Plaintiff on the day he was assaulted were all of Puerto Rican nationality, as was Plaintiff, and two of the inmates were also suspected of being members of the Netas gang, as was Plaintiff.  Defendants' Motion for Summary Judgment, Exs. 1 & 2, 11-25. Defendant John Clark states that Plaintiff posed for a group photo, prior to the assault, with one of his attackers.  Defendants' Motion for Summary Judgment, Ex. 18 (Clark Declaration). Plaintiff himself did not tell Defendants of any specific threat from the inmates in the recreation cage, just allegedly that he did not want to recreate with any other inmates.

Further, Defendants responded reasonably to the risk perceived.  When staff realized Plaintiff had been assaulted, prison officials responded and took care of the situation.

At most, Plaintiff alleges a claim for negligence. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 798-94 (4th Cir. 1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995).

### C.    Retaliation

Plaintiff appears to allege that Defendants retaliated against him by transferring him to the BOP's most gang-infested prison after the incident because he would not identify his attackers. Defendants argue that this fails to state a claim under § 1983 because two of the attackers admitted to the assault on the day of the attack and a transfer was recommended for Plaintiff's safety and so that he could be released into the general population.

Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc), citing, Adams, 40 F.3d at 74.

Defendants provide that Plaintiff was transferred for his own safety. In his complaint, Plaintiff states that he was going to be transferred prior to the time of the assault because of threats against him. Additionally, two individuals involved admitted that they assaulted Plaintiff. See Defendants' Ex. 7.

### D.    Qualified Immunity

8

Defendants also argue that they are entitled to qualified immunity. The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), <u>cert. denied</u>, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

    2.    <u>FTCA</u>

Defendants argue that their motion for summary judgment should be granted as to Plaintiff's claim under the FTCA because: (1) the Court lacks subject matter jurisdiction as to Plaintiff's FTCA claim, as the actions of BOP officials clearly fall within the discretionary

9

function exception to the FTCA, and (2) Plaintiff fails to state a claim upon which relief can be granted.

### A. Discretionary Function Exception

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's FTCA claim because the discretionary function exception bars his claim. Plaintiff appears to allege that the BOP had a mandatory duty to protect him such that the discretionary function exception should not apply.

If the conduct alleged to have been taken by government officials falls under one of the statutory exceptions to the government's limited waiver of sovereign immunity in the FTCA, then the government has not waived its sovereign immunity as to those claims, and this court lacks subject matter jurisdiction over the claims. See 28 U.S.C. §§ 1346, 2674-2680. Among the exemptions in the FTCA is one for claims which fall within the so-called "discretionary function exception." 28 U.S.C. § 2680. Under this exception, there is no government liability for claims based upon the exercise or performance, or the failure to exercise or perform, a discretionary function or duty on the part of a federal agency or an employee of the government. 28 U.S.C. § 2680(a). In order for the conduct at issue to fall within this exception, the action complained of must involve an element of judgment or choice, and the action must relate to considerations of public policy. United States v. Gaubert, 499 U.S. 315, 322-323 (1991); Berkovitz v. United States, 486 U.S. 531, 536-537 (1988). If the discretionary function exception applies, a lawsuit is not allowed under the FTCA, even if the government officials involved abused their discretion or were negligent in the performance of their discretionary functions. Hylin v. United States, 755 F.2d 551, 553 (7th Cir.1985).

Here, the placement of Plaintiff in a certain level of custody involved an element of judgment or choice. Such claims have been held to be barred by the discretionary function exception. See Cohen v. United States, 151 F.3d 1338 (11th Cir.1998), cert. denied, 526 U.S. 1130; Dykstra v. United States Bureau of Prisons, 140 F.3d 791 (8th Cir.1998); Calderon v. United States, 123 F.3d 947 (7th Cir.1997); Buchanan v. United States, 915 F.2d 969 (5th Cir.1990)).; see also Carter v. U.S., 2002 WL 32332081 (D.S.C. Dec 13, 2002)(unpublished), aff'd, 57 Fed.Appx. 208, 2003 WL 1154375 (4th Cir. 2003).

Plaintiff, in his brief in opposition to summary judgment, argues that the BOP's duty to protect him was mandatory under 18 U.S.C. § 4042. Even if the discretionary function exception applied to this action upon the language of 18 U.S.C. § 4042, the same result would follow. "The mandatory duty of care set out in [subsections 4042(a)(2) and (3) ] does not dictate the manner in which [that] duty must be fulfilled." Graham v. United States, 2002 WL 188573, *4 (E.D.Pa. 2002)(unpublished); see also Cohen, 151 F.3d at 1343 (holding that section 4042 neither prescribes nor proscribes particular conduct in fulfilling the duty to protect); Calderon, 123 F.3d at 950 ("[w]hile it is true that [section 4042] sets forth a mandatory duty of care, it does not … direct the manner by which the BOP must fulfill this duty[ ]"). Instead, section 4042 "imposes [nothing less than] a duty of care with BOP discretion in its implementation." Graham, 2002 WL 188573 at *4 (emphasis in original). Accordingly, even assuming that section 4042 imposes a mandatory duty of care upon the BOP to provide for the safekeeping of prisoners in its custody, the discretionary manner in which that duty is to be fulfilled warrants that the alleged actions and/or omissions in this case come within the exception. See Cohen, 151 F.3d at 1342 (holding that "even if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP

11

retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception [ ]") (emphasis added).

        B.    <u>Failure to State a Claim</u>

Defendants argue that even if the discretionary function exception does not bar Plaintiff's FTCA claim, he fails to establish his claim for negligence. In an action for negligence in South Carolina,[4] a plaintiff must allege and show: (1) a duty of care owed by a defendant to a plaintiff; (2) a breach of that duty by negligent act or omission, and (3) damage proximately resulting from the breach. <u>South Carolina Ins. Co. v. James C. Greene & Co.</u>, 348 S.E.2d 617, 620 (S.C.Ct.App. 1986). The absence of any one of these elements renders a cause of action insufficient. <u>South Carolina Ports Authority v. Booz-Allen & Hamilton</u>, 346 S.E.2d 324, 325 (S.C. 1986). The United States stipulates it had the legal duty to safeguard prisoners in its custody from attack by other prisoners.

Plaintiff appears to allege that the United States breached its duty owed because it failed to provide a safe environment for him and failed to protect him from a known danger to his personal safety. The United States argues that Plaintiff fails to establish a breach of duty or causation because it was not foreseeable that the inmates who attacked Plaintiff posed a threat to him.

The duty owed under 18 U.S.C. § 4042 is one of "reasonable care." <u>See Johnson v. U.S. Government</u>, 258 F. Supp. 372 (D.Va. 1966)(prison officials' duty to keep prisoners entrusted to

---

[4]The law of the place where the act or omission occurred applies in FTCA claims. <u>See</u> 28 U.S.C.§ 1346(b); <u>United States v. Muniz</u>, 374 U.S. 150, 152 (1963). The acts alleged in the complaint occurred in South Carolina, thus the law of South Carolina should be applied in this action. <u>See</u> <u>Richards v. United States</u>, 369 U.S. 1, 9-10 (1962).

their care and custody safe is not absolute but only requires exercise of ordinary diligence under the circumstances). "With regard to liability for a negligent act, proximate cause is the efficient, or direct, cause of the thing which brings about the injures complained of." Hughes v. Children's Clinic, P.A., 237 S.E.2d 753, 757 (S.C. 1977).

Plaintiff fails to establish that Defendants breached their duty of care and that their actions were the proximate cause of his injuries. As discussed above, Defendants have provided that Plaintiff was not placed in protective custody, but was protected from the possible danger by being separated from Cuban inmates and members or associates of the Border Brothers. Defendants had no knowledge that inmates of Plaintiff's nationality (Puerto Rican) would assault Plaintiff. See Defendants' Exs. 1, 2, and 11-25.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 77) is granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

June 14, 2005
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Magistrate Judge's Report and Recommendation**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201