IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Carlos José Pagán, ) | |
| ) | C/A No. 3:03-2903-MBS-JRM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **OPINION AND** |
| ) | **O R D E R** |
| United States of America, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Carlos José Pagán is a federal inmate in the custody of the Bureau of Prisons. At the time of the underlying allegations, he was housed at the Federal Correctional Institution in Edgefield, South Carolina. Plaintiff brings this action alleging Defendants violated his rights under the Eighth Amendment to the United States Constitution because they failed to protect him from an attack from other inmates on December 9, 2001. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971). He also asserts a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq.

On September 30, 2004, Defendants filed a motion for summary judgment. By order filed October 4, 2004, pursuant to Roseboro v. Garrison, 538 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response on November 3, 2004, as well as an additional response on April 27, 2005.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Joseph R. McCrorey for pretrial handling. The Magistrate Judge

1

issued a Report and Recommendation on June 4, 2005, in which he recommended that Defendants' motion for summary judgment be granted. Plaintiff failed to file objections to the Report and Recommendation in a timely manner. As such, the court adopted the Report and Recommendation on August 2, 2005. On August 15, 2005, Plaintiff advised the court that he had not received the Report and Recommendation because he was in the process of being transferred to another prison when it was issued. On October 7, 2005, the court vacated its order of August 2, 2005, in order to give Plaintiff the opportunity to file objections to the Report and Recommendation. Plaintiff filed his objections to the Report and Recommendation on October 28, 2005. Defendants did not file a reply to Plaintiff's objections.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The district court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982).

The Magistrate Judge recommends that the captioned matter be dismissed because Defendants are entitled to qualified immunity. After considering Plaintiff's objections, the court concurs in the recommendation of the Magistrate Judge and grants Defendants' motion for summary

judgment. The captioned matter is **dismissed**.

## FACTS

During Plaintiff's confinement at FCI Edgefield, prison officials believed that Plaintiff was involved in a covert narcotics operation at the prison. Defendants' Motion for Summary Judgment, Exhibit 1. Prison officials also believed that Plaintiff, who is Puerto Rican, was the leader of a Puerto Rican prison gang, known as the "Netas." Id. On or about October 22, 2001, after a series of altercations between Cuban and Puerto Rican inmates, prison officials at FCI Edgefield placed Plaintiff in the Special Housing Unit ("SHU") pending an investigation to determine whether viable threats to Plaintiff's safety existed. Id. During this time, prison officials did not place Plaintiff in a cell or recreation with Cuban inmates. Id.

On November 5, 2001, after Plaintiff requested to be returned to the general population, prison officials removed Plaintiff from the SHU. Id., Exhibit 4. On the same day, a confidential informant advised prison officials that a gang of Mexican inmates, known as the "Border Brothers," were going to initiate an attack on Plaintiff if he was returned to the general population. According to the confidential informant, the threat of an attack was allegedly in response to Plaintiff's failure to deliver narcotics for which he had been paid. Id., Exhibit 1. In addition, prison officials believed that the Border Brothers were attempting to eliminate the Netas's involvement in narcotics activity at FCI Edgefield. Id. Based on the information obtained from the confidential informant, prison officials immediately placed Plaintiff back in the SHU pending an investigation and threat assessment. Id. After receiving the information from the confidential information, prison officials did not place Plaintiff in a cell or recreation with Cuban or Mexican inmates. Id.

On November 30, 2001, prison officials concluded the threat assessment and found that a

threat existed to institutional security and Plaintiff's safety if Plaintiff returned to the general population. Id. Prison officials believed that a narcotics-related struggle existed between Cuban and Puerto Rican inmates. Id. Prison officials did not find evidence to suggest that any member of the Border Brothers gang posed a threat to Plaintiff. Id. Nevertheless, prison officials continued to isolate Plaintiff in a cell or during recreation away from Cuban or Mexican inmates. Id.

On December 9, 2001, prison officials placed Plaintiff in a recreation area with four other Puerto Rican inmates. Id., Exhibit 7. Two of the inmates attacked Plaintiff during the recreation period and repeatedly punched him with closed fists. Id. During interviews after the attack, inmates Jose Caraballo-Gonzales and Albert Gonzales-Arimont admitted that they attacked Plaintiff. Id. Inmate Orlando Serrano-Ramos corroborated the attackers' stories and stated that Plaintiff was "talking trash" to his attackers prior to the attack. Id.

Plaintiff sustained significant injuries as a result of the attack on December 9, 2001, including facial fractures, eye injuries, and eyelid and cheek lacerations. As noted by extensive medical records, Plaintiff underwent plastic surgery and other reconstructive procedures immediately following the attack. In addition, Plaintiff has complained of recurring physical and psychological trauma after the attack. Prison medical staff have seen Plaintiff on numerous occasions regarding recurring trauma and have prescribed or recommended over-the-counter medications.

## DISCUSSION

The court has reviewed Plaintiff's objections to the Report and Recommendation. Several objections raised by Plaintiff are general objections to which the court need not respond. See Orpiano, 687 F.2d at 47-48. Plaintiff's specific objections are discussed in turn.

Plaintiff contends that the Magistrate Judge erred in concluding that Defendants cannot be

sued in their official capacities under Bivens. The United States cannot be sued without its express consent under the doctrine of sovereign immunity. United States v. Mitchell, 463 U.S. 206, 212 (1983). The United States has not consented to suit under Bivens. In addition, officers or employees of the United States cannot be sued in their official capacities under the doctrine of sovereign immunity. See Hagemeir v. Block, 806 F.2d 197, 202 (8th Cir. 1986). As such, Defendants cannot be sued in their official capacities. Plaintiff's objection is without merit.

Plaintiff next argues that the Magistrate Judge erred in concluding that Defendants were not deliberately indifferent and negligent in failing to protect Plaintiff from harm from other inmates. Deliberate or callous indifference of prison officials of specific known risks of harm to a convicted inmate constitutes a violation of the Eighth Amendment. Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987). The record suggests that prison officials received information about specific potential threats from Cuban inmates and Mexican inmates who were members of the Border Brothers gang. Plaintiff has not shown that prison officials received any information that Plaintiff was at risk of harm from inmates outside of the Cuban and Mexican inmate population. In addition, Plaintiff did not inform prison officials of any specific threats from inmates outside of the targeted groups. In the current case, prison officials were unaware of a risk of harm to Plaintiff from other Puerto Rican inmates. Under these circumstances, the decision by prison officials not to sequester Plaintiff from Puerto Rican inmates did not constitute a violation of the Eighth Amendment. Prison officials were not deliberately indifferent to a known risk of harm of Plaintiff and are, therefore, entitled to qualified immunity. Plaintiff's objection is without merit.

CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment is **granted**. The captioned matter is **dismissed**.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
United States District Judge

March 3, 2006
Columbia, South Carolina


**NOTICE OF RIGHT TO APPEAL**

**Plaintiff is hereby notified that he has the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**